IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

TERRI L. ALPE                                                              PLAINTIFF

V.                                    NO. 4:18-cv-00035-JM

FEDERAL NATIONAL MORTGAGE
ASSOCIATION, INC.                                                  DEFENDANT

<u>RECOMMENDED DISPOSITION</u>

This Recommended Disposition ("RD") has been sent to United States District Judge James M. Moody Jr. Either party may file objections if they disagree with the findings or conclusions set out in the RD. Objections should be specific, include the factual or legal basis for the objection, and must be filed within fourteen days. If you do not object, you risk waiving the right to appeal questions of fact, and Judge Moody can adopt this RD without independently reviewing the record.

I.       INTRODUCTION

Plaintiff Terry L. Alpe sues Defendant Federal National Mortgage Association, Inc. ("Fannie Mae"), alleging that Fannie Mae took her home in a nonjudicial foreclosure sale in violation of Arkansas law.[1] Now before the Court are: (1) opposing motions and related responses regarding Fannie Mae's amended

---

[1]  Ms. Alpe filed this lawsuit in state court, and Fannie Mae removed  it pursuant to 28 U.S.C. § 1332, asserting diversity of citizenship between the parties and an amount in controversy exceeding $75,000. *Doc. 1.*

responses to requests for admissions[2] and (2) cross-motions for summary judgment with related responses and replies.[3]

For reasons that follow, I recommend that the Court: (1) grant Fannie Mae's motion to amend responses to requests for admissions; and (2) grant summary judgment in favor of Fannie Mae on all claims.

## II.   BACKGROUND

On March 17, 2006, Ms. Alpe and her husband obtained a home loan by executing a promissory note ("the Note") and mortgage ("the Mortgage"). The Note, in the original amount of $184,000 in favor of Quicken Loans, required payments of $1,193.43 on the first of each month. *Doc. 109-2*. The Mortgage granted Mortgage Electronic Registration Systems, Inc. ("MERS") (as mortgagee acting solely as "nominee" for Quicken Loans) a lien on the Alpes' primary residence on Breckenridge Drive in Little Rock, Arkansas ("the Property").[4] *Doc. 109-3*.

On December 2, 2014, MERS assigned the Mortgage to Ocwen Loan Servicing, LLC ("Ocwen"), and on August 10, 2015, Ocwen assigned the Mortgage

---

[2] *Docs. 100-101, 111-117.*

[3] *Docs. 106-110, 120-127. 130-131.*

[4] In December 2008, the Alpes filed a Chapter 13 bankruptcy petition; in March 2014, the Bankruptcy Court discharged a portion of their debts; and in May 2014, the bankruptcy proceedings closed. *Docs. 109-73, 109-74, 109-75.*

Neither party contends that the bankruptcy proceedings affected Ms. Alpe's mortgage debt. A Chapter 13 bankruptcy plan may provide for a default cure and maintenance payments for any secured debt while the bankruptcy proceeding is in progress, but the plan may neither discharge nor modify a security interest in the debtor's principal residence. 11 U.S.C. § 1322(b)(2) & (b)(5).

to Defendant Fannie Mae. *Docs. 109-4, 109-5*. Ocwen serviced the loan until August

1, 2015, when Seterus, Inc. ("Seterus") became the servicer. *Docs. 109-19, 109-20.*

Beginning in June 2014 and continuing through November 3, 2016, Ocwen

and then Seterus repeatedly notified Ms. Alpe that her loan payments were

delinquent and provided her options to avoid default and foreclosure:

- In June 2014, Ocwen notified Ms. Alpe that she failed to make loan payments for May and June 2014 and encouraged her to apply for assistance. *Doc. 109-7.*

- By letter dated August 14, 2014, Ocwen offered Ms. Alpe a trial payment plan ("TPP"):  If she made payments of $1,257.66 by September 1, October 1, and November 1, 2014, Ocwen would permanently modify her loan. *Doc. 109-12*. In bold print, the letter stated:  To Accept this Offer Make your first trial plan payment of $1,257.66 by 9/1/2014." *Id.*

- By letter dated October 9, 2014, Ocwen told Ms. Alpe it could not offer her a loan modification because she "failed to make the initial trial payment within the required timeframe." *Doc. 109-13*.

- On November 20, 2014, Ms. Alpe paid Ocwen $3,772.98 (3 x $1,257.66). *Doc. 109-77 at 15*.  According to Ms. Alpe, Ocwen instructed her by phone to "make all three payments at once and that would be ok." *Doc. 120 at 4.*

- By letter dated December 20, 2014, Ocwen offered Ms. Alpe a second TPP, possibly leading to a permanent loan modification, if she made payments of $1,597.61 by January 1, February 1, and March 1, 2015. *Doc. 109-14.*

- Ms. Alpe did not make payments according to the second TPP offer. Instead, by checks dated January 10, February 10, and March 10, 2015, she made three payments for $1,260. *Doc. 109-78 at 5,7, 8*.  Ms. Alpe states that she "had a meeting of the minds" with Ocwen that "Loan Modification One" was in effect and she therefore did not follow the requirements of the second TPP offer.  *Doc. 121 at 9.*

3

- By letter dated March 17, 2015, Ocwen told Ms. Alpe that her request for a loan modification was approved, provided that she: (1) made payments of $1,260.77 by the first of each month; and (2) completed and returned an enclosed modification agreement, along with any required attachments by March 31, 2015.[5] *Doc. 109-16*. The letter cautioned: "IMPORTANT! The loan modification will not be complete until we receive all properly executed documents. If the modification is not completed, we will continue to enforce our lien. If the conditions outlined . . . are not satisfied the modification will be withdrawn." *Id. at 4*.

- By letter dated May 6, 2015, Ocwen notified Ms. Alpe that she was not eligible for a loan modification because she failed to timely return an executed loan modification agreement. *Doc. 109-17*.

- Despite Ocwen's May 6 letter, Ms. Alpe, by affidavit, contends that she accepted the March 2015 loan modification agreement and returned an executed agreement before March 31, 2015. *Doc. 120 at 4*. She states that she called Ocwen to make sure it had received the executed agreement, and "they said they had it." *Doc. 120 at 4*. Ocwen, however, has no record that it received an executed agreement (*Doc. 109-1 at 5*), and Ms. Alpe cannot locate her copy. *Doc. 120 at 4*.

- Ms. Alpe maintains that she and Ocwen entered a loan modification agreement in March 2015 but acknowledges that she "didn't always" make payments of $1,260.77 by the first of the month. *Doc. 120 at 5*. She recalls that any time she failed to make a $1,260.77 payment by the first of the month, she called Ocwen and received instructions not to worry and just send the payments. *Id*.

- Ocwen and Seterus mailed Ms. Alpe notices in August 2015, stating that Seterus would begin servicing her loan as of August 1, 2015. *Docs. 109-19, 109-20.*

- Seterus mailed Ms. Alpe a letter dated August 24, 2015, stating that her loan was in default and demanding a payment of $12,218.37 by September 28, 2015. *Doc. 109-21 at 2*. Seterus warned that if Ms. Alpe failed to cure the default, it could result in the sale of the Property. *Id*.

---

[5] Although the letter was dated March 17, 2015, it stated that the "first modified payment begins 12/1/2014." *Doc. 109-16 at 1*.

Ms. Alpe contends she was not in default at that time and current under the "March 2015 Loan Modification." *Doc. 121 at 12.*

- On September 1, 2015, Seterus mailed Ms. Alpe notice that she had been approved for a third TPP, with monthly payments of $1,564.80 due by October 1, November 1, and December 1, 2015. *Doc. 109-22.*

- Ms. Alpe did not make payments according to the third TPP. Instead, she made payments of $1,265 in September, November, and December 2015. *Doc. 109-78 at 14, 15, 17.* She states that she made these payments "pursuant to the March 2015 Loan Modification previously entered into." *Doc. 120 at 5-8.*

- By letter dated December 31, 2015, Seterus offered Ms. Alpe a loan modification, with monthly payments of $1,636.80, beginning February 1, 2016. *Doc. 109-23.* To accept the offer, Ms. Alpe was required to sign and return a modification agreement enclosed with the letter by February 1, 2016. *Id. at 2.*

- By affidavit, Ms. Alpe states that she received and signed the modification agreement and "sent it back."[6] *Doc. 120 at 6.* However, Seterus has no record that it received a signed agreement from Ms. Alpe. *Doc. 109-1 at 6.* In addition, Ms. Alpe acknowledges that she did not make payments for $1,636.80 as required by the modified loan agreement and continued making payments "pursuant to the March 2015 Loan Modification." *Doc. 120 at 6-7.*

- On February 26, 2016, Seterus mailed Ms. Alpe a letter stating that she had qualified for a loan modification, but it had not received a signed loan modification agreement. *Doc. 109-25.* Seterus enclosed another loan modification agreement and advised Ms. Alpe: "If we do not receive your signed agreement by March 11, 2016, the modification will be canceled, and we may commence or continue collection activities on the loan." *Id.*

---

[6] In response to Fannie Mae's statement of material facts, Ms. Alpe states that "she faxed the agreement and was told on the phone that Defendant received it." *Doc. 121 at 14.* However, in her affidavit submitted in opposition to Fannie Mae's motion for summary judgment, Ms. Alpe simply says that she received the modification agreement "signed it, and sent it back." *Doc. 120 at 6.*

- By affidavit, Ms. Alpe states: "I received [the modification agreement], signed it, and faxed it back and was told on the phone by the servicer they had received it prior to, or on, March 11, 2016." *Doc. 120 at 6.*

- By letter dated March 17, 2016, Seterus notified Ms. Alpe that her loan modification had been denied because it had not received "the signed agreement and/or initial payment." *Doc. 109-26.*

- On May 5, 2016, Seterus mailed Ms. Alpe a letter providing information regarding the delinquency status of her loan and potential alternatives to foreclosure. *Doc. 109-39.* Ms. Alpe states that she never received the letter. *Doc. 120 at 6.*

- Ms. Alpe sent Seterus payments in June, August, and October 2016. After receiving each payment, Seterus sent Ms. Alpe a letter stating that the Mortgage Loan remained in default. *Docs. 109-28, 109-29, 109-30.*

- By letter dated August 11, 2016, Seterus offered Ms. Alpe a loan modification, with monthly payments of $1,310.19, beginning September 1, 2016. *Doc. 109-31* To accept the offer, Ms. Alpe was required to sign and return a modification agreement enclosed with the letter by September 1, 2016. *Id. at 2.*

- By letter dated October 5, 2016, Seterus notified Ms. Alpe that the loan modification offered August 11 went unapproved because it had not received "the signed agreement and/or initial payment." *Doc. 109-32.*

- On November 3, 2016, Seterus mailed an additional default notice to Ms. Alpe. *Doc. 109-39.*

On December 12, 2016, on behalf of Fannie Mae, attorneys for Wilson & Associates, PLLC ("Wilson") recorded a notice of default of intention to sell ("NOD") in the Pulaski County real estate records, stating that Wilson, as attorney-in-fact or trustee for Fannie Mae, would sell the Property to the highest bidder on February 21, 2017, pursuant to Ark. Code. Ann. § 18-50-103. *Doc. 109-34.*

By letter to Ms. Alpe dated December 20, 2014, Wilson explained that the Note was in default, Fannie Mae had accelerated the debt, and Wilson would sell the Property at a foreclosure sale. *Doc. 109-34*. Wilson enclosed a copy of the recorded NOD.

On December 21, 2016, Fannie Mae recorded a limited power of attorney appointing Wilson as trustee for purposes of foreclosing the Mortgage pursuant to the Arkansas Statutory Foreclosure Act ("ASFA"). *Doc. 106-2*. Fannie Mae and Wilson executed the limited power of attorney on December 14, 2016, after Wilson had recorded the NOD. *Id*.

On February 6, 2017, Seterus sent a completed form to Wilson through an online portal. *Docs. 112 at 70-72, 109-1 at 9, 109-42*. The form stated that the borrower, Ms. Alpe, was not eligible for Home Affordable Modification; all loss mitigation alternatives had been exhausted;  and the borrower "did not provide all necessary documents after those documents had been requested." *Doc. 109-42*.

On February 21, 2017, the nonjudicial foreclosure sale ("the Sale") went forward, and Fannie Mae purchased the Property for $174,600. *Doc. 109-37*. Fannie Mae took title via mortgagee's deed, executed and recorded on  February 23, 2017. *Doc. 109-37*.

Fannie Mae later sold the Property to Brian Carl Cross and Adrienne Phillips, who took title via special warranty deed executed and recorded on August 17, 2017. *Doc. 109-41.*

On December 12, 2018, Ms. Alpe filed this lawsuit, alleging that Fannie Mae wrongly foreclosed the Mortgage securing her home loan.[7] In her amended complaint, she asserts multiple claims: (1) failure to strictly comply with ASFA perquisites to exercising a mortgagee's power of sale;[8] (2) slander of title; (3) violation of the Arkansas Deceptive Trade Practices Act ("ADTPA"); (4) outrage; (5) filing false documents; (6) abuse of process; and (7) breach of contract.

For relief, Ms. Alpe asks the Court to declare the Sale void and without effect, set aside Fannie Mae's mortgagee's deed, and quiet title to the Property in her. *Doc. 15 at 13, 20.* In addition, she seeks compensatory and punitive damages, plus attorney's fees and costs. *Id.*

---

[7] Fannie Mae moved to dismiss Ms. Alpe's original complaint for failure to state a claim. *Docs. 5, 6.* The Court denied the motion without prejudice and permitted Ms. Alpe to amend her complaint. *Doc. 12.*

[8] Ms. Alpe's allegations in support of her strict-compliance claim include, but are not limited to, the following: (1) Wilson was not appointed as Fannie Mae's foreclosure trustee until after Wilson recorded the NOD; (2) Fannie Mae failed to notify Ms. Alpe that she did not meet the criteria for loan modification; (3) the NOD was deficient because it failed to identify a specific default. *Doc. 15 at 11-13.*

Both sides filed second motions for summary judgment.[9]   In addition, the

parties filed dueling motions on whether the Court should permit Fannie Mae to

amend certain responses to requests for admissions.

---

[9] Several unforeseen events delayed resolution of this case. On May 20, 2020, Fannie Mae filed its first motion for summary judgment (*Docs. 22, 23, 24*), arguing that it substantially complied with ASFA requirements. However, Fannie Mae withdrew the motion (*Docs. 32, 33*) after the Arkansas Supreme Court held that the ASFA must be strictly construed and requires a mortgagee's notice of default to "state the specific default that occurred." *Davis v. Pennymac Loan Servs., LLC*, 2020 Ark. 180, 8, 599 S.W.3d 128, 133 (2020).

On July 28, 2020, Ms. Alpe filed her first motion for summary judgment (*Docs. 38, 39, 40*), and Fannie Mae filed a counter motion. *Docs. 46, 47, 48, 49, 50*.   In September 2020, the parties participated in a settlement conference but were unable to reach an agreement. *Doc. 67*.

On December 15, 2020, the parties filed a joint motion to continue, stating that the CARES Act moratorium on foreclosure-related actions prevented Fannie Mae from asserting a counterclaim. *Doc. 68*. The Court granted the motion and denied the pending cross-motions for summary judgment, without prejudice. *Doc. 69*.

In May 2021, the Arkansas General Assembly passed Act 1108, amending the ASFA. Among other things, Act 1108 requires that a mortgagor assert a claim that a mortgagee failed to strictly comply with the ASFA within thirty days from a foreclosure sale. *See* Ark. Ann. 18-50-116(d)(2)(B)(ii) & (D). On October 18, 2021, with leave of Court, Fannie Mae filed its third amended answer, adding the affirmative defense that Ms. Alpe failed to bring her strict-compliance claim withing thirty days of the February 21, 2021, foreclosure sale.  *Doc. 104 at 13*.

On October 22, 2021, the parties filed the pending cross motions for summary judgment (*Docs. 105, 106*).  In January 2022, the Court stayed the case pending answers to questions certified to the Arkansas Supreme Court concerning whether the thirty-day limit for asserting a strict-compliance claim applies to Ms. Alpe. *Docs. 142, 145*. In April 6, 2023 opinion, the Arkansas Supreme Court held that retroactive application of Act 1108 against a mortgagor who had initiated a strict-compliance claim would be unconstitutional. *Alpe v. Federal National Mortgage Association*, 662 S.W.3d 650, 653, 2023 Ark. 58, 4 (2023).

IV.   **DISCUSSION**

A.   **The Court Should Permit Fannie Mae's Amended Responses to Requests for Admissions**

Ms. Alpe asserts that Fannie Mae failed to comply with several ASFA requirements, including its duty to notify her that she did not meet the criteria for a loan modification. The ASFA requires a mortgagee to send the required notice at least ten business days before a foreclosure sale to "each mortgagor . . . *who applied for* a loan modification or forbearance assistance . . . ." Ark. Code Ann. § 18-50-104(3)(A) (emphasis added). In addition, the mortgagee must certify to its trustee that each mortgagor who applied for loan modification or forbearance received the required notice.[10] *Id*.

---

[10]   Fannie Mae's mortgagee deed states that "pursuant to Ark. Code Ann. § 18-50-104, [Wilson] received certification that Terri L. Lemay Alpe [and] John B. Alpe had not applied or [were] ineligible for loan modification or forbearance assistance, and that notice of such ineligibility was sent in compliance with Ark. Code Ann. § 18-50-104(a)(3)(A)."

It is undisputed that Seterus informed Ms. Alpe, via letter dated October 5, 2016, that a loan modification it had offered her on August 11, 2016, was not approved because Seterus had not received a signed agreement or initial payment. *Doc. 109-32; Doc. 121 at 17.* The material dispute is whether Ms. Alpe applied for a loan modification *after* October 5, 2016, imposing a duty on Fannie Mae to send her additional notice, at least ten business days before the February 21 foreclosure sale (i.e., on or before Monday, February 6, 2017), advising she did not qualify for a loan modification.

On February 6, 2017, Seterus sent an informational form to Wilson through an online portal. *Docs. 112 at 70-72, 109-1 at 9, 109-42.* It stated that Ms. Alpe was not eligible for Home Affordable Modification, all loss mitigation alternatives had been exhausted, and the borrower "did not provide all necessary documents after those documents had been requested." *Doc. 109-42.*

On or about February 8, 2017, Seterus received an incomplete application for borrower assistance from Ms. Alpe. *Doc. 109-40.* However, according to Ms. Alpe, after she received the December 2016 NOD, she applied for a loan modification and sent all necessary documents to Seterus. By affidavit, she states that she sent and resent documents to Seterus via fax, which Seterus lost or misplaced, but Seterus finally "said they had everything and not to worry about the foreclosure." *Doc. 28 at 7.* According to Ms. Alpe, Fannie Mae (through its servicing agent Seterus)

"strung her along" right up to the sale date, rather than approve her loan modification application. *Doc. 131 at 2*.

On July 31, 2020, Ms. Alpe served Fannie Mae with requests for admissions, and Fannie Mae responded on September 1, 2020. Concerning the question of whether Ms. Alpe applied for a loan modification, Ms. Alpe's Request Nos. 1, 5, and 7 and Fannie Mae's initial responses state:

> REQUEST NO. 1: Admit that Plaintiff contacted Defendant or its servicer "Seterus" seeking loan modification regarding the Loan after October 5, 2016.
> Response: Deny.

> REQUEST NO. 5: Admit that Plaintiff contacted Defendant or its servicer "Seterus" and applied for a loan modification regarding the Loan after October 5, 2016.
> Response: Admit.

> REQUEST NO. 7: Admit that Defendant did not send to Plaintiff notice, by certified mail, that she did not meet the criteria for loan modification or forbearance assistance under any program.
> Response: Deny.

*Doc. 100 at 6*.

On August 27, 2021, Fannie Mae's Rule 30(b)(6) representative, Alan Blunt, was deposed and testified that before the foreclosure sale, Ms. Alpe submitted an "incomplete [loan modification] application." *Doc. 112 at 49*. Considering Mr. Blunt's testimony, Fannie Mae amended its responses to Request Nos. 1, 5, and 7 as follows:

REQUEST NO. 1: Admit that Plaintiff contacted Defendant or its servicer "Seterus" seeking loan modification regarding the Loan after October 5, 2016.
Amended Response: Admitted.

REQUEST NO. 5: Admit that Plaintiff contacted Defendant or its servicer "Seterus" and applied for a loan modification regarding the Loan after October 5, 2016.
Amended Response: Denied.

REQUEST NO. 7: Admit that Defendant did not send to Plaintiff notice, by certified mail, that she did not meet the criteria for loan modification or forbearance assistance under any program.
Amended Response: The Defendant has made reasonable inquiry and the information known or readily obtainable to it is insufficient for Defendant to admit or deny this request, and it is therefore denied.

*Doc. 100 at 11.*

On October 8, 2021, Ms. Alpe filed a motion to strike Fannie Mae's amended responses (*Docs. 100, 101*). On October 22, 2021, Fannie Mae filed a response in opposition (*Doc. 111, 112*) and a motion seeking leave to file amended admissions (*Doc. 113*). Subsequently, Ms. Alpe filed a response in opposition to Fannie Mae's motion to amend (*Doc. 114*) and a reply in support of her motion to strike. *Docs. 115, 116.* For reasons that follow, the Court should grant Fannie Mae's motion and deny Ms. Alpe's motion.

Rule 36(b) of the Federal Rules of Civil Procedure provides that a matter admitted is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended. However, Rule 36(b) says that "the court may permit withdrawal or amendment if it would promote the presentation of the

merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits."  In deciding whether to permit Fannie Mae to revise its responses, the Court must consider: (1) whether permitting the requested amendments will promote the presentation of the case on the merits; and (2) whether Ms. Alpe has demonstrated that she will be prejudiced if the amendments are permitted. *F.D.I.C. v. Prusia*, 18 F.3d 637, 640 (8th Cir. 1994).  The answers to these questions weigh decisively in favor of permitting the amendments.

First, allowing Fannie Mae's requested amendments will permit consideration of a potentially dispositive question of law. A mortgagee's duty to notify a mortgagor that she does not qualify for a loan modification is triggered only when the mortgagor has "applied" for a loan modification. See Ark. Code Ann. § 18-50-104(3)(A). But the ASFA does not define "application" and it is not clear whether a complete, formal application is necessary before notice is required.

Second, Ms. Alpe fails to satisfy her burden to show that the proposed amendments will prejudice her ability to prove her claim. The prejudice contemplated under Rule 36(b) relates to the difficulty a party may face in proving its case because of the sudden need to obtain evidence to prove the matter that had been admitted. *Prusia*, 18 F.3d at 640. "The necessity of having to convince the trier of fact of the truth of a matter erroneously admitted is not sufficient." *Id*.

Ms. Alpe reports that she justifiably relied on Fannie Mae's initial admission that she had applied for a loan modification after October 5, 2016, and her attorney shifted the focus of discovery to whether Fannie Mae sent the required notice. *Doc. 101 at 2*. However, the record confirms that Ms. Alpe does not depend on Fannie Mae's initial admissions to show that she applied for a loan modification after October 5, 2016.

In support of her summary judgment motion, Ms. Alpe presents a copy of a Seterus borrower assistance application, with her signature and markings indicating it transmitted via fax on February 8, 2017. *Doc. 106-4*. She also presents her affidavit testimony stating that she completed the application process. *Doc. 28 at 6*-9.

Because the Rule 36(b) requisites for amending responses to requests for admissions are met, the Court should exercise discretion to grant Fannie Mae's motion to amend its responses.

**B.     The Court Should Grant Summary Judgment in Favor of Fannie Mae**

**1.     ASFA Strict-Compliance Claim**

The legislative goal of the ASFA is "to provide an efficient and fair procedure for the liquidation of defaulted mortgage loans to the benefit of both the homeowner and the mortgage lender." 1987 Ark. Acts 121, § 19. The ASFA includes requirements for providing notice and other details that must be satisfied before a nonjudicial foreclosure sale.

15

The ASFA gives a mortgagor the right to cure a default any time after the notice of default, up to the time of sale, by paying the entire amount due, late fees, costs, and expenses. Ark. Code Ann. § 18-50-114(a). However, the foreclosure sale terminates all rights of redemption. *Id.* § 18-50-108(b).

The ASFA specifies that the statutory foreclosure scheme does not impair the right of any person to assert legal and equitable rights in court, *id*. § 18-50-116(d)(2)(A), but it imposes limitations. First, the ASFA provides that "a claim or defense shall be asserted prior to the sale, or the claim or defense is forever barred and terminated, except the mortgagor may assert the following against either the mortgagee or trustee: (i) Fraud by any party; or (ii) Failure to strictly comply with the provisions of [the ASFA]." *Id*. § 18-50-116(d)(B). Second, although a mortgagor retains claims for fraud and strict compliance against the mortgagee or trustee, the same claims may not be asserted against a subsequent purchaser for value. *Id*. § 18-50-116-(d)(2)(C). Here, Ms. Alpe claims that Fannie Mae failed to strictly comply with multiple provisions of the ASFA.

### a.   Fannie Mae's Affirmative Defense Fails

After Ms. Alpe filed this lawsuit in 2018, the Arkansas General Assembly passed Act 1108 of 2021, imposing a time limit for bringing a strict-compliance claim against the mortgagee.[11] Under the amended law, a mortgagee must assert a

---

[11] The amendment came as a direct result of the holding in *Davis v. Pennymac Loan Servs.,*

strict-compliance within thirty days from the foreclosure sale. Ark. Code Ann. § 18-50-116(d)(2)(D). In addition, the General Assembly stated its intention that Act 1108 would apply retroactively. See Acts of 2021, Act 1108, § 3.

Fannie Mae asserts that Ms. Alpe failed to bring her strict compliance claim within thirty days of the Sale. Ms. Alpe argues that retroactive application of the thirty-day filing period will disturb her vested right to bring a strict-compliance claim. *Doc. 132*.

Given the unsettled and potentially dispositive questions of state law presented, on January 13, 2022, Judge Moody certified four questions to the Supreme Court of Arkansas concerning Act 1108. The Supreme Court of Arkansas accepted and answered a single question: whether Act 1108 applies retroactively. In an opinion issued April 6, 2023, the state court answered:

> Retroactive application of Act 1108 to a mortgagor who has initiated a claim for strict compliance would deprive the mortgagor of a defense to a foreclosure action. In this circumstance, the Act cannot be constitutionally applied retroactively.

*Alpe*, 662 S.W.3d 650 at 653.

---

*LLC*, 2020 Ark. 180, 8, 599 S.W.3d 128, 133 (2020), that the ASFA must be strictly construed and requires a mortgagee's notice of default to state the specific default that occurred. The General Assembly found that *Davis* "resulted in instability and uncertainty the real estate market as it relates to the sale of properties subject to or following a statutory foreclosure." 2021 Arkansas Laws Act 1108, § 1.

Because Ms. Alpe's strict-compliance claim vested in 2017, Act 1108's thirty-day filing limit does not apply, and Fannie Mae's affirmative defense under § 18-50-116(d)(2)(D) fails.

> **b.      Fannie Mae's Failure to Strictly Comply with the ASFA, Without More, Does Not Entitle Ms. Alpe to Partial Summary Judgment or a Remedy**

Fannie Mae acknowledges that its NOA was deficient because it failed to identify the specific mortgage provision that Ms. Alpe violated. The Arkansas Supreme Court has held the ASFA requires that a "notice must state the specific default that occurred." *Davis v. PennyMac Loan Services, LLC,* 599 S.W.3d 128, 133, 2020 Ark. 180, 8 (2020).

Given Fannie Mae's undisputed failure to strictly comply with at least one ASFA pre-sale requirement, Ms. Alpe asks the Court to grant partial summary judgment in her favor; declare the Sale to Fannie Mae void; and set aside Fannie Mae's mortgagee's deed. For reasons that follow, the requested equitable relief should be denied.

The ASAF plainly states that any claim for fraud or failure to strictly comply may not be asserted against a subsequent purchaser for value. Ark. Code. Ann. § 18-50-116(d)(2)(C). After the Sale, Fannie Mae sold the Property to Brian Carl Cross and Adrienne Phillips for $208,200, and title transferred to Cross and Phillips via special warranty deed. *Doc. 109-41*. Ms. Alpe does not contend that Cross and

Phillips do not qualify as subsequent purchasers for value, and she cannot challenge

their title, indirectly, based on Fannie Mae's failure to strictly comply with the

ASAF.

In addition, declaratory relief is proper only when all interested parties are

joined and the remedy will "afford relief from uncertainty and insecurity with respect

to rights, status and other legal relations." [12] Ark. Code Ann. § 16-111-112.  Neither

requisite is met in this case.

Ms. Alpe also seeks money damages for Fannie Mae's failure to comply with

the ASAF. However, Arkansas does not recognize a common law tort for wrongful

foreclosure, see *Harmon v. Wells Fargo Bank, N.A*., No. 2:15-CV-2098, 2016 WL

1718391, at *2 (W.D. Ark. Apr. 29, 2016), and the plain language of the ASAF does

not provide for a private cause of action or monetary damages. See *Chew v.*

*American Greetings Corp*., 754 F.3d 632, 637 (8th Cir. 2014) (citing *Cent. Okla.*

*Pipeline, Inc. v. Hawk Field Servs., LLC*, 2012 Ark. 157, 400 S.W.3d 701, 711

(2012); *Kowalski v. Rose Drugs of Dardanelle, Inc*., 378 S.W.3d 109, 118-19, 2011

Ark. 44, 13 (2011); *Shannon v. Wilson,* 329 Ark. 143, 947 S.W.2d 349, 356–58

---

[12] A federal court exercising diversity jurisdiction applies state substantive law and federal procedural law. Like the Arkansas Declaratory Judgment Act, Ark. Code Ann. §§ 16-111-101 through 117, operation of the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, is procedural and provides "an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Wilton v. Seven Falls Co*., 515 U.S. 277, 288 (1995); *see also* Ark. Code Ann. § 16–111–106 (stating that a court may refuse to render a declaratory judgment where if rendered, it would not terminate the uncertainty or controversy giving rise to the proceeding).

(1997) (noting that Arkansas courts are hesitant to find that a statute or regulation expands common law absent clear legislative intent that such is the case).

In sum, Fannie Mae's failure to strictly comply with ASAF requirements, standing alone, does not entitled Ms. Alpe to summary judgment or equitable or monetary relief.

### 2.    Slander of Title: No Genuine Issues for Trial

"Slander of title is an action based on malicious publication of a false matter that disparages the title to property." *Fleming v. Cox Law Firm*, 363 Ark. 17, 20, 210 S.W.3d 866, 868 (2005) (citing *Sinclair Ref. Co. v. Jones*, 188 Ark. 1075, 70 S.W.2d 562 (1934)). To succeed with this claim, Ms. Alpe must prove that Fannie Mae "acted with malice, express or implied, in making slanderous statements regarding the title of another in property." *Hardy v. Bartmess*, 696 F. Supp. 2d 1008, 1015 (E.D. Ark., 2010) (citing *Sinclair Refining Co. v. Jones*, 188 Ark. 1075, 70 S.W.2d 562 (1934)). "Malice is not present where the allegedly slanderous statements were made in good faith and based on a reasonable belief in their veracity." *Id*. (citing *Elliott v. Elliott*, 252 Ark. 966, 482 S.W.2d 123 (1972)).

Ms. Alpe's slander-of-title claim is based on Fannie Mae's recording of the NOD on December 12, 2017. *Doc. 15 at 13*. She alleges that Fannie Mae recorded the NOD despite knowledge that: (1) she was not in default; and (2) she was in discussions with Seterus regarding a loan modification. *Id*.

Ms. Alpe acknowledges that she made her last mortgage payment on October 1, 2016, and she failed to make November 1, 2016 payment. *Doc. 121 at 17*. It is undisputed that Ms. Alpe was in default when Fannie Mae filed the NOD on December 12, 2015.  Even if Fannie Mae knew that Ms. Alpe was discussing a loan modification with Seterus, this did not alter the fact that the loan was in default. Fannie Mae is entitled summary judgment on this claim.

### 3.   Filing False Documents: No Genuine Issues for Trial

Arkansas Code Ann. § 5-37-226, a criminal statute, makes it unlawful to record an instrument that adversely affects a person's title or interest in real property with knowledge of the instruments "lack of authenticity or genuineness" with the intent of adversely affecting a person's title or interest in the property. See *Quinn v. Ocwen Federal Bank FSB*, 470 F.3d 1240, 1246 (8th Cir. 2006). Under subsection (c), an owner, lessee, or assignee of real property who brings suit to remove the cloud from his title is entitled to three times actual damages, punitive damages, and costs, including attorney's fees.[13] Importantly, the statute provides that it "shall not apply

---

[13] Ms. Alpe does not allege that she has current title in the property, thus it is not clear that this case qualifies as an action to remove a cloud from title. See *Hunter v. MidFirst Bank*, No. 4-21-cv-00362-LPR, 2021 WL 5999651, at *14 (E.D. Ark., Dec. 20, 2021) (questioning whether a plaintiff asserting violations of the ASFA, who no longer held title in the subject property, could bring the type of action contemplated under § 5-37-226 to recover monetary damages); see also *McNeil v. Metropolitan Nat. Bank*, No. 4:13CV00076 JMM., 2013 WL 2099815 (E.D. Ark., May 14, 2013) (holding that § 5-37-226 does not provide a private cause of action for violation of the statute).

to bona fide filings of . . . legitimate notice and protective filings provided by law."
Ark. Code Ann. § 5-37-226(d).

Ms. Alpe alleges that she is entitled to recover damages under § 5-37-226
because Fannie Mae "caused to be recorded multiple documents in this matter that
were obtained through willful and wonton violations of statutory procedures and the
use of fraudulently recorded affidavits." *Doc. 15 at 17*. However, even assuming that
Fannie Mae failed to comply with ASAF requirements in every way alleged by Ms.
Alpe, the documents Fannie Mae recorded in connection with the foreclosure
process (i.e., Wilson's limited power of attorney, the NOD, an affidavit of mailing,
and the mortgagee's deed) did not lack authenticity or genuineness. There is no
allegation or evidence that the documents were forged or something other than what
they purport to be. In addition, Ms. Alpe offers no allegations or evidence indicating
that Fannie Mae had knowledge that the documents lacked authenticity or
genuineness.

Fannie Mae is entitled to summary judgment on this claim.

### 4.   The Arkansas Safe Harbor Provision of the ADTPA Precludes Ms. Alpe's Claim Against Fannie Mae

Ms. Alpe sues Fannie Mae under the ADTPA's catchall provision that outlaws
any unconscionable, false, or deceptive act in business, commerce or trade. Ark.
Code. Ann. § 4-88-107(a)(10). She contends that she relied to her detriment on

Fannie Mae's representation that if she submitted a loan modification application, no foreclosure would take place. *Doc. 122 at 34.*

Under the ADTPA's safe harbor provision, the Act does not apply to actions or transactions by regulated bodies acting under the statutory authority of the United States. *See* Ark. Code Ann. § 4-88-101(3). Fannie Mae is a federally charted corporation authorized to do exactly what it did in this case: purchase, service, sell, or otherwise deal in any mortgages for the purpose of promoting access to mortgage credit. 12 U.S.C. §§ 1716(1), 1719. Fannie Mae is regulated by the United Sates Department of Housing and Urban Development and the Federal Housing Finance Agency. 12 U.S.C. § 4511.  Because Fannie Mae's alleged conduct falls under the ADTPA's safe harbor provision, the ADTPA claim should be dismissed.

Even if the ADTPA applied, Fannie Mae would be entitled to summary judgment on the merits. A prima facie case under the ADTPA requires: (1) a deceptive, consumer-oriented act, which is misleading in a material respect; and (2) an injury resulting from such act. *Parnell v. FanDuel, Inc*., 591 S.W.3d 315, 318, 2019 Ark. 412, 4 (2019). The AdTPA limits recovery in private actions to cases of "actual financial loss." Ms. Alpe must prove that she suffered "an actual financial loss" proximately caused by her reliance on Fannie Mae's (more accurately, Seterus's) representation that a foreclosure sale would not take place. See Ark. Code Ann. § 4-88-113(f)(1)(A).

It is undisputed that on December 20, 2016, when Ms. Alpe received notice of the foreclosure sale, she had not paid her November 1, or December 1, 2017 installments, and she never did. *Doc. 121 at 17*. Ms. Alpe explains: "If Defendant had not acted like [I] was in breach of the March 2015 Loan Modification for so long, sending [me] letters that flew in the face of [my] telephone calls [with Seterus] and documents [I] sent back . . . and their representations to [me], [I] [might] have made more payments." *Doc. 121 at 17*.

It is clear from Ms. Alpe's explanation that despite her conversations with Seterus regarding a loan modification, she made no additional payments because she knew that the foreclosure sale would go forward. Accordingly, she cannot prove detrimental reliance or actual financial loss proximately caused by a deceptive act.

### 5.   Outrage: No Genuine Issues for Trial

 Under Arkansas law, a claim for intentional infliction of emotional distress, also known as outrage, has four elements:  (1) the defendant intended to inflict emotional distress or should have known that emotional distress was the likely result of its conduct; (2) the defendant's conduct was extreme and outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the plaintiff's emotional distress was so severe that no reasonable person could be expected to endure it.  See *Crockett v. Essex*, 341 Ark., 558, 563-64 (2000).

24

Here, Ms. Alpe argues that Fannie Mae "strung her along" in order to obtain a mortgagee's deed to her home. *Doc. 122 at 35*. In addition, she states that in March 2016, Fannie Mae's agent offered her a check in exchange for releasing all claims against Fannie Mae, but she rejected the offer. *Doc. 122 at 35-26*; *Doc. 28 at 8*. Ms. Alpe adds that after she vacated her home, her insurance company notified her that Fannie Mae made claims for water damage and vandalism. *Id*. She argues, but provides no evidence showing, that the insurance claims were false and submitted by Fannie Mae in retaliation for her refusal to sign the release.

Arkansas courts take a very narrow view of claims for outrage and reserve liability for only the most atrocious conduct. Even viewing the facts in a light most favorable to Ms. Alpe and giving her the benefit of every reasonable inference, no reasonable factfinder could find in her favor on an outrage claim. Fannie Mae is entitled to summary judgment on this claim.

### 6.    Abuse of Process: No Genuine Issues for Trial

Ms. Alpe must establish three elements to prevail on an abuse of process claim: (1) a legal procedure set in motion in proper form, even with probable cause, and even with ultimate success; (2) perverted to accomplish an ulterior purpose for which it was not designed; and (3) a willful act in the use of process not proper in the regular conduct of the proceeding. See *Union Nat. Bank of Little Rock v. Kutait*, 312 Ark. 14, 16–17, 846 S.W.2d 652, 654 (1993). The Supreme Court of Arkansas

has explained that "abuse of process is somewhat in the nature of extortion or coercion" and the "'key is improper use of process after issuance, even when issuance has been properly obtained.'" *Id.* (quoting *Smith v. Nelson*, 255 Ark. 641, 644, 501 S.W.2d 769, 770–71 (1973)).

Ms. Alpe argues that Fannie Mae: (1) chose not to follow ASAF requirements; (2) recorded a false deed transferring the Property to itself, while knowing that the foreclosure sale was unlawful; and (3) forced her from her home and sought to have her execute a release. *Doc. 122 at 37.* The undisputed evidence shows that Ms. Alpe was delinquent on her Mortgage payments and Fannie Mae pursued foreclosure, which it had a right to do. Fannie Mae used the ASFA to accomplish the precise purpose for which it is designed, and Fannie Mae's failure strictly follow ASFA requirements does not qualify as perversion of the nonjudicial foreclosure procedure.

Ms. Alpe cannot succeed with an abuse-of- process claim, and Fannie Mae is entitled to summary judgment.

### 7.   Breach of Contract: No Genuine Issues for Trial

Ms. Alpe claims that Fannie Mae breached a March 15, 2015 loan modification, which she calls "Loan Modification #1." Despite the lack of any documentation showing the parties entered a loan modification agreement at any time, Ms. Alpe claims that the parties had a "meeting of the minds" and agreed that she would pay a reduced amount of "approximately $1,300 per month for her

mortgage payment."[14] *Doc. 122 at 37, Doc. 15 at 4, 19*. She alleges that Fannie Mae breached Loan Modification #1 by: (1) foreclosing on the Mortgage when was not in default; (2) failing to apply payments made; and (3) calling the note when she was current under Loan Modification #1. *Doc. 15 at 19*.

Even assuming that Ms. Alpe could prove the existence of Loan Modification #1, which is most unlikely, the undisputed evidence shows that she made her last monthly payment in October 2016, and she was in default when Fannie Mae began the process to exercise its power of sale. Fannie Mae is entitled to summary judgment on this claim.

## V.   CONCLUSION

IT IS THEREFORE RECOMMENDED that:

(1)   Plaintiff's motion to strike supplemental responses (*Doc. 100*) be DENIED, and Defendant Fannie Mae's motion to amend responses to requests for admissions (*Doc. 113*) be GRANTED.

(2)   Defendant's second motion for summary judgment (*Doc. 105*) be GRANTED, and Plaintiff's amended and substituted motion for partial summary judgment (*Doc. 106*) be DENIED.

---

[14]   In her affidavit, Ms. Alpe stated that the March 2015 loan modification called for payments of $1,260.77. Doc. 120 at 4. She stated that she didn't always make payments under the purported loan modification agreement, but anytime she missed a payment, Ocwen told her not to worry and just send the payment. *Doc. 120 at 5*.

(3)     This action be DISMISSED WITH PREJUDICE and the Clerk be instructed to close the case.

Dated 10 January 2024.

_____
UNITED STATES MAGISTRATE JUDGE